UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Docket No.: 0090 1:21CR00282-002** |
| ELLIOT BISHAI | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

### INTRODUCTION

The Defendant does not disagree with the basic recitation of most of the facts as set forth by the United States Attorney in the government's sentencing memorandum. Thus, while we will respectfully take issue with some of the arguments and analogies within the government's memorandum, we will not provide any significant additional facts herein, except for those facts that may be helpful to the Court's consideration in mitigation, or in a couple of matters that appear to be materially inaccurate.

Although Elliot Bishai did not, on January 6th, nor has he ever engaged in any type of violence against a person or property in connection with his actions, nor did he come to Washington that day to participate in an attack on the Capitol, he has nonetheless pled guilty to one count of misdemeanor Entering and Remaining in a Restricted Building 18 USC § 1752(a)(1).

For his actions, Mr. Bishai would begin by offering his apologies to the Court, the United States Attorney's Office, and the United States for his actions, as his actions have taken up the time of the Court and the United States Attorneys, the Federal Probation Officer, and others

involved in the process. But even above and beyond the single Federal Misdemeanor count for which he has pled guilty, Mr. Bishai would also offer his apologies for some of the words that he used outside the United States Capitol, and in particular, the phrases "Let's Go" and "Civil War II."

The truth is that Mr. Bishai, months after the fact, did not even remember uttering those words outside the Capitol until the United States Attorney provided audio and video coverage of events outside the Capitol, through the discovery process, and he then recognized his image and heard his voice. The words are embarrassing because Mr. Bishai became caught up in the moment outside the Capitol, as others were yelling, and he briefly joined in the yelling fray, for a few moments, unfortunately.

By contrast, Mr. Bishai's actions inside the Capitol were respectful toward Capitol Hill Police Officers. He even engaged in friendly "fistbumps" with several of them and caused no harm to persons or property. Inside the Capitol, he did not raise his voice as he had outside the Capitol, and left peacefully after a relatively short period, showing that he was not in any way, shape, or form interested in any sort of "Civil War II."

Nonetheless, he remains embarrassed by his words and apologizes to the Court for this extremely poor choice of words spoken outside the Capitol.

Finally, as part of our introduction, Mr. Bishai would like to thank the Court and the United States Attorney's Office for treating him fairly in the pretrial process.

As the Court may recall, Mr. Bishai is a firefighter who travels around the country to combat forest fires in his current job, as his employer works hand-in-hand with the National Forest Service to combat wildfire spread. In support of this mission, the Court has kindly allowed Mr. Bishai to enter remote appearances via Webex twice from the fireline, and even

allowed him to plead guilty via Webex from a fireline location in Western Virginia. For that, Mr. Bishai is grateful.

## Mr. Bishai's Actions Post-January 6, 2021

As the actions of January 6, 2021, have been spelled out in great detail, for purposes of mitigation, we will begin by sharing with the Court some of the background events that occurred, soon after the time of Mr. Bishai's arrest.

Soon after his arrest in his Fort Mill, South Carolina home on March 16, 2021, and after the case was transferred from the United States Attorney's Office for the District of South Carolina to the District of Columbia, and, within days of the transfer, Mr. Bishai instructed his attorney to reach out to the United States Attorney's Office for the District of Columbia the begin inquiring about plea offers.

As has been pointed out elsewhere, and as the Court may recall from a number of pre-trial appearances, Mr. Bishai was arrested along with two initial co-defendants, Elias Irizarry and Grayson Sherrill, who traveled together from South Carolina to Washington, D.C., where all three entered the Capitol on January 6, 2021.

And although neither Mr. Irizarry nor Mr. Sherrill have acknowledged responsibility or pled guilty to the events for which they are charged, which is within their constitutional rights, by contrast, Mr. Bishai sought to plead guilty almost immediately after his arrest. In fact, within two days of the case being transferred to the District of Columbia, Mr. Bishai instructed his counsel to contact the United States Attorney about accepting responsibility and pleading guilty.

Despite Bishai's desire to plead guilty early on, the undersigned was informed, during the week following March 16, 2021, that the United States Attorney, because of the sheer volume of cases involved, would not be in a position to consider any plea deals for many months.

It was our understanding that other "more serious" cases involving those who have been incarcerated and/or who had been charged with felonies, were understandably jumping ahead of the misdemeanor cases on the priority chain. Additionally, Mr. Bishai was told that the government was not yet ready to consider a plea offer because of an absolute flood of discovery evidence that had to be sorted out, from many cameras within the Capitol itself, and from obtaining and analyzing cell phone records and photographs from numerous defendants.

While all these are certainly valid reasons for the delay, we nonetheless would like the Court to know that in the case of Mr. Bishai, he has never for one second hesitated about accepting responsibility for his actions, and would have pled guilty months ago, had circumstances allowed it.

Additionally, even before he was offered a plea deal,  Mr. Bishai took the step forward and offered to be of help to the U.S. Attorney, in the prosecution of other cases. As the government's pre-sentencing report indicates, Mr. Bishai voluntarily agreed to an interview by the Federal Bureau of Investigation on February 14, 2022, as reflected on page 16 of the United States Attorney's sentencing report.

At this point, we need to correct an error in the United States Attorney's Report.

On page 16, as the report shares about Bishai voluntarily coming forth to cooperate with the government by talking to the FBI, the following information is relayed, part of it materially incorrect:

3

In total, Bishai spent 27 minutes inside of the Capitol. In addition to the signs of violence Bishai saw outside the Capitol, he also saw blood on the ground inside the Capitol, which he recorded on a video located on his phone. See Exhibit 10. On the ride home, Sherrill admitted to Bishai and Irizarry that he had hit a police officer in the head with a pole. Sherrill's assault is documented on video from an open-source. Despite Sherrill telling Bishai about the assault, Bishai did nothing with this information until his interview with the FBI on February 14, 2022.

The inaccurate material here concerns the government's representation that, "Despite Sherrill telling Bishai about the assault, *Bishai did nothing with this information until his interview with the FBI on February 14, 2022*." (Emphasis added).

That representation is inaccurate.

The truth is that Mr. Bishai had offered to share this information with the government in the weeks before February 14, 2022. In fact, his Counsel, the undersigned, first called and talked to the U.S attorney about making the proffer, and then, even submitted an email to the U.S. Attorney, on January 31, 2022, at 1:42 PM, EST, (two weeks before February 14) attached hereto as **EXHIBIT A** and embedded below:



It is unclear as to why the United States Attorney would make an inaccurate representation on this crucial point, that "*Bishai did nothing with this information until his interview with the FBI on February 14, 2022*," when the email records clearly, and indisputably show that Bishai, through counsel, reached out to the prosecution team at least two weeks earlier, offering not only specific information about Sherrell, but also including an offer to submit to the interview by the FBI, which occurred two weeks later. Also, the email of January 31, 2022 indicates that the defense counsel and U.S. Attorney had been discussing the issue of Sherrell striking the officer even before January 31, 2022.

In this case, of course, we are willing to give the United States Attorney the benefit of the doubt and assume that perhaps they forgot about Mr. Bishai's multiple clear attempts to reach out and offer help when they attempted to characterize him as not coming forward about Mr. Sherrell before the FBI interview. But the facts are the facts. We ask the Court to consider that Mr. Bishai

wanted to do his part in helping the prosecution, as he considers the act of striking a police officer, as Sherrell admitted to, to be a reprehensible act.

Keep in mind that no plea offer had even been struck when Mr. Bishai initially came forward, voluntarily, with the email of January 31, 2022,  and even before that, with information concerning Mr. Sherrell having admitted to striking the police officer.

In fact, on or about February 4, 2022, the defense counsel had a conference with the United States attorneys working on the case concerning the matter. A copy of Defense Counsel's attorney notes is pasted below and attached hereto as **EXHIBIT B**.

Memo to Elliot Bishai
From DMB
Date 4 Feb 2022

CW Grace Albinson and Rachel Fletcher…

Fletcher… interested in debriefing and cooperation..

These case a little uniquie for cooperation…

Requiring a debrief for part of plea offer…. A safety valve debrief… admit to own role in offiense..

Best way to go forward is set up a virtual debrief next week..

Will send a debriefing letter.. Came for the day.. Won't be used against him…

Checklist for full cooperation… depending on next to give…

Debriefing letter.. Will reach out for client.

Reach out and get some times …

About two hours for the block…

Frobly have somedone from FBI.. reach out

WILL NEED 2 HOURS FOR DEBRIEF…

As can be seen, the United States Attorney indicated that there would have to be a debrief for a plea officer. No plea offer had taken place by February 4, 2022, and certainly not by January 31, 2022.

On the very same day, February 4, 2022, the Assistant United States Attorney overseeing the prosecution of this case sent an email to Defense Counsel along with a debriefing letter. A copy of the email is pasted below. The debriefing is attached hereto as **EXHIBIT C**.



A debriefing letter from the U.S. Attorney accompanied that email, and we note specifically that no plea agreement had been entered into as of the date of that letter, which was February 4, 2022.

> (5)     This debriefing agreement does not obligate the United States Attorney's Office for the District of Columbia to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.   In addition, your client understands that this office has made no additional promises to your client not contained in writing herein.

Again, it is unclear why the U.S. Attorney would try to say or insinuate that Mr. Bishai did not come forward with any information about Sherrell until the actual debriefing with the FBI, on February 14, 2022. But the fact of the matter is that Mr. Bishai did come forward, earlier, several times, even without the protection of any plea agreement, and the Court, respectfully, should take that into consideration as a mitigating factor in his favor.

Moreover, there is also, an apparently regrettable attempt to besmirch Mr. Bishai based upon, less-than-tasteful uploads found on his cellphone, which have no relevance to the charges for which he has pled guilty, and should not be considered in aggravation.

We refer to language on page 16 of the pre-sentencing report as follows:

> Bishai's phone contains over 80 images that reflect Nazi and white supremacist ideologies. Additionally, Bishai's phone contains over 400 videos made by the internet personality "GypsyCrusader."[3] When confronted by the case agent about this, Bishai claimed that he did not believe he had downloaded 400 videos, and thought it was a much smaller number. He also claimed that all of the Nazi and white supremacist content on his phone – including the GypsyCrusader videos – were there solely because he found them to be humorous, not because he actually agreed with their content. Bishai added that he did not share this material publicly.

As detestable as the notions of Nazism and white supremacy may be, and they should be detestable to all freedom-loving Americans, and whatever these "GypsyCrusader" videos are, all of which Mr. Bishai described as "humorous" and did not disseminate any of the content, these detestable notions have nothing to do with the charges that have been brought in this case nor do they have anything to do with the charges for which Mr. Bishai has pled guilty. Unfortunately, this appears to be an attempt to urge punishment because of someone's private thought processes,

having nothing to do with the offense, even if the Defendant only finds private humor in the images.

Moreover, there is no evidence whatsoever that Mr. Bishai participated in any of the conversations found on his phone. He may or may not have read some of the materials, but again, there is no evidence that he was a participant, and should not be judged as such. It's not like he's some sort of chat-room leader of some sort of nazi group on the internet. He apparently doesn't even post in any of these rooms or participate in any way.  Reading something, if Mr. Bishai read anything on his phone, doesn't mean you are a part of something or agree with something. The implication here, made by the United States attorney, is again, an illogical stretch and not relevant to the charges involved, or the events of January 6.

Ironically, Mr. Bishai is not even a white person, as is pointed out in a letter by his father, Hani Bishai, who is of Egyptian and Sudanese descent, a copy of which is attached hereto as **EXHIBIT D**.

As Hani Bishai's letter points out, Elliot, who is half-Egyptian/Sudanese by descent, spent part of his time growing up in Kuwait, at least for a year and has never been involved in any type of white supremacist group, or some neo nazi group. Despite the images found on his phone, whether they were uploaded or not, and despite his reasons for possibly finding humor with some of the photographs apparently that had been found, there is an absolute disconnect between all that and the crime for which he has accepted responsibility.

By contrast, and as we see in Hani Bishai's letter, and in other places, the organizations that Elliot has been involved with, which speak to his true record, and to who he truly is, include the Junior ROTC program at school, the Civil Air Patrol, placing his life on the line working day in and day out as a firefighter, volunteering for the "Team Rubicon" disaster response unit,  and

having volunteered to serve his country in the United States Army. Those are the organizations for which the Defendant has been associated, or which he is best known,  and we ask the Court to consider in determining an appropriate sentence.

<u>The Comparison of Room S145 to the Speaker's Officers, to a U.S. Senator's Offices, and to Private, Highly Sensitive Areas in the United States Capitol</u>

Mr. Bishai, alongside another Defendant, Mr. Elias Irizarry, unlawfully entered into a restricted space in the Capitol, a relatively unknown "Room S145," where he and Elias Irizarry lingered a few moments, took pictures, then quickly left the space. Mr. Bishai did not post pictures of the space, Room S145.

Again, Mr. Bishai accepts criminal responsibility for entering and remaining in a restricted space.

However, the United States, in its pre-sentencing brief, attempts to compare entering a relatively unknown space, Room S145, to other defendants who entered the high-profile, high security-sensitive spaces of the Speaker of the House of Representatives, and the office of United States Senator Jeff Merkley (D Oregon).

The United States Attorneys' attempt to compare Room S145 to two other private, highly sensitive areas in the United States Capitol, is not credible.

We believe that it is a stretch to attempt to compare Room S145, in any way, shape, or form, to Speaker Pelosi's office as the government has attempted to do, on page 27 of the SENTENCING MEMORANDUM [83]. On page 28, the government goes on to say that "while

room S145 that Bishai entered was not a private office, it's clearly recognizable as a more private space than, for instance, the Rotunda, and thus implicates similar concerns."

Again, with respect to this argument, it's an illogical stretch.

First off, the government concedes that Room S145 *is not a private office*, which makes it very different from the Speaker's Office (one of the most public offices in the world). The government then goes on to argue that "it's clearly recognizable as a more private space than for instance the Rotunda, and thus implicates similar concerns."

As a "more private space than the Rotunda?"

The government's argument here is unclear and unsound. It concedes that the space is not a private office but then makes a comparison to the Rotunda and suggests it should be more recognizable as a "more private space" than the Rotunda. That's a bit of a circular argument.

With respect to using the Rotunda as a measuring stick for determining the relative privacy of spaces,  as the government has chosen to do, then every space in the United States Capitol would seem to be "a more private space than the Rotunda." The Rotunda is, and always has been, the most recognizable part of the interior of the United States Capitol to all the free world.

To compare Bishai's entry into that relatively- unknown space, to the actions of Mr. . Maccozzo (Defendant who perpetrated the Office of the Speaker of the House of Representatives), doesn't hold water, comparatively speaking. Bishai did not enter the Speaker's office, did not enter the office of a U.S. Senator, or any other high-profile area of the Capitol.

Likewise, the government memorandum continues to make a similar stretch in logic by noting that on page 28 of its SENTENCING MEMORANDUM [83], another defendant, Mr. Lucard, entered the private offices of United States Senator Jeff Merkley. Again, while

acknowledging criminal responsibilities for his actions, Room S145 is not a private office and is certainly not the office of a United States Senator.

At pages 27-30 of its pre-sentencing brief, the government goes on about other defendants who entered the Speaker spaces and two other defendants who entered Senator Merkley's office. With respect, it really is not credible to try and compare the office of the Speaker of the House, and the office of the United States Senator, in a relatively unknown and unheard of public space, Room S145, which is not anybody's personal office..

Then the government, on page 30, switches gears and attempts to compare Mr. Bishai to a one Joshua Wagner, who got 30 days confinement after deliberately defying orders from the United States Capitol Police and from chanting things to the police.

Again, with respect, attacking, using disrespectful language, and resisting police officers were among the most egregious actions taken by certain defendants during the entire January 6, 2021 episode. Mr. Bishai did not do any of this at all, and if anything, the fact that Mr. Wagner was given 30 days of confinement suggests that Mr. Bishai's conduct is far less deserving of any confinement at all. Unlike Mr. Wagner, Mr. Bishai has been nothing but respectful to police officers all his life and unlike others, was respectful to police officers on the day in question, January 6, 2021.

The facts are the facts and all the "comparative sentencing" examples used by the government in their Sentencing Memorandum, including defendants entering the Speaker's Offices, entering a U.S. Senator's offices, and disobeying police officers, were engaged in conduct more egregious than that of the Defendant, and sentencing should be considered with that in mind.

**WHAT IS THE APPROPRIATE SENTENCE IN THIS CASE?**

12

This brings us to the question "what is the appropriate sentence in this case?"

We begin this analysis by citing two observations, one from the United States Attorney's Sentencing Memorandum, and the second from the United States Probation Officer's sentencing recommendation.

On page 26 of the U.S. Attorney's SENTENCING MEMORANDUM [83], the United States correctly observed, in our opinion, "Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention."

As we have seen, we believe the evidence shows that Mr. Bishai falls within this particular category. Yes, he trespassed, but his offense has been less aggravating. There's been no harm to property, there has been no harm to any person, and Mr. Bishai has sought to take responsibility early on and even to help the government and its prosecution of other defendants, particularly one who attacked a police officer.

We also consider the Probation Officer's Sentencing recommendation (Document 85)[1]

On page 1 of the Probation Officer's Sentencing Recommendation (Document 85),[2] the Probation Officer, Mr. Brian D. Shaffer, Chief United States Probation Officer, states, "Mr. Bishai's culpability appears to be minimal in contrast with individuals who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date. It should be noted that the co-defendants have a trial date set for January 3, 2023."

While we note that the United States Attorney is requesting a sentence of 30 days of active confinement, which we understand the Court may accept or reject, we believe that a more

---

[1] https://brownattorneys.mycase.com/documents/172040663/view
[2] https://brownattorneys.mycase.com/documents/172040663/view

appropriate sentence in line with the Probation Officer's recommendations, set forth in

Document 85, and shown below:

**SENTENCING RECOMMENDATION**
**UNITED STATES V. ELLIOT BISHAI**
**DOCKET NO.: 0090 1:21CR00282-002**

**TOTAL OFFENSE LEVEL**          **4**
**CRIMINAL HISTORY CATEGORY**    **I**

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| **CUSTODY:** | Ct 7: 1 year | 0-6 months | Not Recommended |
| **SUPERVISED RELEASE:** | Ct. 7: year | 1 year | Not Recommended |
| **PROBATION:** | Ct.7: Up to 5 years | Up to 3 years | 36 months (3 years) |
| **FINE:** | Ct. 7: $100,000 | $500 to $9,500 | $0 |
| **RESTITUTION:** | $500 | $500 | $500 |
| **SPECIAL ASSESSMENT:** | $25 | $25 | $25 |

In this case, we do not believe that any type of active incarceration would serve the

interests of the United States at all, nor would such a sentence serve the public, or the Defendant.

In fact, we would point out that, as reflected in the attached letter of the Defendant's father Hani

Bishai, Defendant has already lost an opportunity to serve the United States Army as a pilot in

the Army Warrant Officer Flight Program. That has been Elliot's lifelong dream and his actions

have already cost him dearly. Additionally, Elliot has also had his student pilot's license revoked

by the Federal Aviation Administration, in conjunction with the Transportation Safety

Administration.  Mr. Bishai has lost his student pilot's license and his opportunity to serve as an Army Warrant officer for having been in the Capitol for 27 minutes.

Mr. Bishai has already paid dearly for his actions, and having him serve any sort of active incarceration would not serve the best interest of either the United States or the Defendant.

We ask the Court also to consider **EXHIBIT E** containing materials attached in mitigation, including various recommendation letters and other matters which will give the Court a better picture of Elliot Bishai.

We concur with the Probation Officer that there should be no incarceration imposed, and no supervised release. We also believe that given the individual circumstances of this case, with no damage to persons or property, that restitution of $500 would be appropriate along with a $25 Special Assessment. We agree with the Probation Officer in requesting that no fine be assessed. Because of Mr. Bishai's job as a front-line responder, as a firefighter, we believe the public's best interest would be best served by a shorter period of probation than suggested by the Probation Officer, namely approximately one year.

As the Court is aware, the Defendant is currently serving as a firefighter, on the front lines of forest fires around the country. Should the Court elect not to impose an active sentence at the conclusion of this case, the Defendant will head immediately to Oregon, to battle brush fires, until that situation is under control and until he is given another assignment on the fire line.

We believe it will be in the best interests of the United States, and of the American people, and of the Defendant, to keep the Defendant in this case on the frontlines, fighting fires to help save property and help save lives. Incarceration, for however long, would only take him

off the front lines, and the public is better served, in this case, by having him do exactly what he does.

At either rate, we are grateful for the Court's consideration of this matter and trust that the Court will do what is right and equitable in the disposition of this case.

Respectfully submitted,


Dated: July 22, 2022.

/s/ Donald M. Brown, Jr.
Donald M. Brown, Jr.
S.C. Bar No. 9902
N.C. Bar No. 14178
Federal ID Number 6307
don@brownattorneys.com
Park South Professional Center
10440 Park Road, Suite 200
Charlotte, NC 28210
T: 704-542-2525
F: 704-541-4751
www.brownattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon counsel of record using the Court's ECF System:

John Norman Maher john@maherlegalservices.com

Rachel A Fletcher rachel.fletcher@usdoj.gov, usadc.ecfvcnt@usdoj.gov

Donald M Brown, Jr brownandassociatespllc@gmail.com

Grace Albinson grace.e.albinson@usdoj.gov

Dated: July 22, 2022.

/s/ Donald M. Brown, Jr.
Donald M. Brown, Jr.
S.C. Bar No. 9902
N.C. Bar No. 14178
Federal ID Number 6307
don@brownattorneys.com
Park South Professional Center
10440 Park Road, Suite 200
Charlotte, NC 28210
T: 704-542-2525
F: 704-541-4751
www.brownattorneys.com